## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JEFFREY GABBAY,                                  :
                                                 :
                    Plaintiff,                   :
                                                 :            C.A. No.1:20-cv-00743-JLH
          v.                                     :
                                                 :
BERNARD G. CONAWAY, ESQUIRE                       :            JURY TRIAL DEMANDED
and CONAWAY-LEGAL LLC,                            :
                                                 :
                    Defendants.                  :
                                                 :

## MEMORANDUM OF LAW IN SUPPORT OF THE
## DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

**SEITZ, VAN OGTROP & GREEN, P.A.**

/s/ *R. Karl Hill*
R. Karl Hill, Esquire (2747)
222 Delaware A venue, Suite 1500
Wilmington, DE 19801
Tele: (302) 888-7604
Email: *khill@svglaw.com*

*Attorneys for the Defendants*

Date: June 21, 2024

# TABLE OF CONTENTS

Page

Table of Citations ........................................................................................................ ii

A.    Nature and Stage of the Proceedings ................................................................1

B.    Summary of the Argument.................................................................................1

C.    Concise Statement of Facts ...............................................................................3

D.    Argument .........................................................................................................10

        Standard of Review .................................................................................10

  I.    Under Delaware Law, a Claim for Breach of Contract Must Allege the Breach
        of an Obligation Imposed by the Contract – Count I................................. 11

  II.   The Plaintiff has No Contractual Relationship with Defendant Bernard
        Conaway – Count 1....................................................................................11

  III.  The Breach of Bailment Must be Dismissed Because the Plaintiff Fails to Allege
        Return of the Property and Fails to Develop Evidence that the Defendants Failed
        to Exercise Ordinary Care to Safeguard the Property - Counts III and VI ............12

  IV.   Count IV of The Complaint Fails as a Matter of Law and Fact ...........................13

  V.    The Estoppel Claim Fails to Allege Legal Elements Necessary to Support
        the Claim – Unnumbered Count ................................................................15

  VI.   Plaintiff Cannot Pierce the Corporate Veil – Count VII........................................15

  VII.  At All Relevant Times, Defendant Conaway was Acting Within the Scope
        and Course of His Employment with Defendant Conaway Legal. ......................16

  VIII. The Plaintiff's Breach of Fiduciary Claim and Breach of Contract Claim Must be
        Dismissed as Duplicative of his Negligence Claim – Count I, II and VI. .............18

E.    Conclusion .......................................................................................................19

# TABLE OF CITATIONS

Page

*Amboy v. Bancorp. v. Bank Adv. Group*, 432 F.App'x 102, 111 (3d Cir. 2011) ...........................19

*Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ..........10

*Arunachalan v. Pazuniak*, 2017 U.S. Distr. LEXIS 146370 (D. Del. Sept. 11, 2017) .................19

*Beattie v. Beattie*, 786 A.2d 549 (Del. Super. 2001) .....................................................................13

*Blunt v. Lower Merion Sch. Dist*., 767 F.3d 247 (3d Cir. 2014)....................................................10

*Cohen v. Horn*, 2022 U.S. Dist. LEXIS 95455 (D.N.J. May 27, 2022) ........................................19

*Devincentis v. European Performance, Inc*., 2012 LEXIS 200 (Del. Super. Apr. 17, 2012)........12

*E. I. Du Pont de Nemours & Co. v. Admiral Ins. Co*., C.A. No. 89C-AU-99, 1994 Del.
    Super. LEXIS 346(Aug. 3, 1994) .....................................................................................14

*Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187 (Del. 2015) ....................................17

*Jardel Co. v. Hughe*s, 523 A.2d 518 (Del. 1987) ........................................................................14

*Lamont v. New Jersey*, 637 F.3d 177 (3d Cir. 2011) ...................................................................10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574 106 S. Ct. 1348,
    89 L. Ed. 2d 538 (1986) .....................................................................................................10

*Pawley Petrol. Inc. v Continental Oil Co.*, 239 A2d. 629 (Del. 1968)........................................16

*Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 120 S. Ct. 2097,
    147 L. Ed. 2d 105 (2000) ...................................................................................................10

*Sokol Holdings, Inc. V. Dorsey & Whitney, LLP*, 2009 Dl. Ch. LEXIS 142
    (Del. Ch. Aug. 5, 2009).......................................................................................................18

*Sherman v. State Dep't of Pub. Safety*, 190 A.3d 148 (Del. 2018) ..............................................17

*Thomas v. Hobbs*, 2005 Del. Super. LEXIS 164 (Del. Super. April 27, 2005) ............................17

*U. S. Bank Nat'l. v. Swanson*, 2006 Del. LEXIS 671, 918 A.2d 339 (Del. 2006)........................15

*Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, No. 2020-0194-KSJM,
    2022 Del. Ch. LEXIS 50 (Ch. Mar. 2, 2022).....................................................................16

*VLIW Tech., L.L.C. v. Hewlett- Packard Co*., 840 A.2d 606 (Del. 2003) .....................................11

*Waters v. Del. Moving & Storage, Inc.*, 300 A.3d 1 (Del. Super. 2023) ......................................13

*Williams v. West*, 891 F.2d 458 (3d Cir. 1989)...............................................................10

**Other Authority**

Federal Rule of Civil Procedure 56 ...............................................................................9

Fed. Rule of Civil Procedure 56(a) ...............................................................................9

Fed. Rule of Civil Procedure 56(c)(1) ........................................................................ 11

Restatement (Second) of Agency § 219(a) ................................................................ 17

Restatement (Second) of Agency § 228 .....................................................................17

Restatement (Second) of Torts § 908, comment b ..................................................14

8 Del. C. § 220 .............................................................................................4, 11, 12

18 Del. C. § 18-303(a)............................................................................................ 16-17

3A Fletcher Cyclopedia Corporations § 1134 ........................................................16

## A.     NATURE AND STAGE OF THE PROCEEDINGS

This action arises out of the settlement of a "books and records" case against Cupron, Inc. litigated in the Delaware Court of Chancery.  Plaintiff retained Defendant Conaway Legal LLC in that matter.  The Chancery Court cases was settled in May 2019, by way of a buyout of Plaintiff's shares in a Delaware corporation.  Plaintiff was paid $$444,990.00.  Those funds were wired to Defendant Conaway Legal's escrow account.  Unbeknownst to the Defendants, Plaintiff's email account was hacked twice during the June 1 to August 1, 2019, time period.  Plaintiff never informed the Defendants or Plaintiff's Pennsylvania counsel, Clifford Rieders, about the hacking. The settlement funds were wired to Honk Kong and never seen thereafter.

This action was filed on June 20, 2020.  The initial complaint and each iteration thereafter asserted various claims sounding in tort and contract.  The operative complaint is the Third Amended Complaint ("Third Am. Compl.") filed on July 27, 2022. **D.I**. 32. According to the Scheduling Order, all discovery was to be initiated in order to be completed by May 15, 2024. **D.I.** 65, at ¶ 7(a). Three depositions were completed.  Plaintiff and Defendants retained an expert and reports were circulated.

The date to file dispositive motion was set at June 14, 2024. *Id.* at ¶ 9.  That date was extended by Stipulated Order to June 21, 2024, by oral order docketed on June 13, 2024.

This is the Defendant's *Memorandum of Law in Support of the Defendants' Motion for Summary Judgment* in support of the Defendants' Motion for Summary Judgment.

## B.     SUMMARY OF THE ARGUMENT

This action arises out of the settlement of a "books and records" case litigated in the Delaware Court of Chancery. Gabbay Depo at **30/11-22**, Exhibit "A" to the Appendix.  Plaintiff retained Defendant Conaway Legal LLC in that matter.  The Chancery Court case was settled in

May 2019, by way of a buyout of Plaintiff's shares in a Delaware corporation. Gabbay Depo. at **35/10-12**. Plaintiff was paid $$444,990.00 ("**Settlement Funds**"). Gabbay Depo. at **35/10 to 37/9.** The Settlement Funds were first wired into Defendant Conaway Legal's escrow account. Thereafter, and for the following two months, Defendant Conaway Legal wired the settlement proceeds to a Hong Kong bank. The settlement funds were wired to Honk Kong and never seen thereafter.

Unbeknownst to the Defendants, Plaintiff's email account was hacked twice during the June 1 to August 1, 2019, time period. *Gabbay Dep.* at 139/17-24 (referring to a July/August hack) and 48/9 to 49/7 (discussing bringing the computer vendor before learning of the July/August hack). (Gabbay Depo., Exhibit "A" to Appendix hereto). Despite his awareness of the hacking problem, Plaintiff never informed the Defendants or Plaintiff's Pennsylvania counsel about the hacking. *Plaintiff's Responses First Request for Admissions* at 1 and 2. (Exhibit "C" to Appendix hereto).

The operative complaint asserts the Defendants willfully ignored Plaintiff's instructions to wire the Settlement Funds to a US bank. **D.I. 32, at p. 1**. That instruction, according to the Plaintiff, was contained in a July 2, 2019, email. That email stated, "you will be receiving from us in the next week or so (July 4th weekend is delaying things) instructions for the transfer of our funds to an account in the USA." **CL**-025. [1] About an hour and a half latter a second email was received from Plaintiff's email account. It stated: "After meeting with our financial advisor today, we agreed to wire transfer the remaining settlement funds to my "affiliated company bank account in Hong Kong." **CL-027**." Despite the obvious conflict, when asked if the Settlement Funds should be wired to Hong Kong, Plaintiff was silent.

---

[1] All references to documents referenced with a CL prefix herein are attached collectively as Exhibit "B" to the Appendix hereto.

The Motion for Summary Judgment seeks dismissal of the following claims for the following reasons:

1.     **Count I – Breach of Contract**: Failure to identify an obligation imposed by Defendant Conaway Legal's Retainer Agreement.   Lack of a contractual relationship with Defendant Conaway.  Claim is duplicative of negligence claim.

2.     **Count II – Breach of Fiduciary Duty**: Legal impermissible because the fiduciary claim is duplicative of the negligence claim.

3.     **Count III – Bailment**: Claim is legally defective for which no recovery is possible.

4.     **Count IV – Willful Wanton Conduct**: Claim is legally deficient for which there is no recovery possible.

5.     **Count V – Estoppel:** Claim is legally deficient for which there is no recovery possible.

6.     **Count VI – Bailment and Fiduciary Duty**: Claim is legally deficient for which there is no recovery possible.

7.     **Count VII – Piercing the Corporate Veil**: Claim is legally deficient for which there is no recovery possible.

In addition, the Motion for Summary Judgment seeks dismissal of Plaintiff claims for punitive damages and individual liability as against Defendant Conaway.

## C.  CONCISE STATEMENT OF FACTS

1.     Defendant Conaway-Legal LLC is a Limited Liability Company incorporated in the State of Delaware. *Answer to Compl*. at ¶ 4.

2.     Defendant Conaway Legal was retained by Plaintiff in July 2017, Conaway Dep. at 5/14-23, "to pursue a 220 books and records claims against [Cupron, Inc.]." *Conaway Dep*. at

3

8/7 to 9/10.  (Exhibit "D" to Appendix hereto).

3.      Defendant Conaway Legal LLC sent Plaintiff, by way of Mr. Rieders, a retainer agreement ["Agreement"]. *Third Am. Compl.* at Exh. 1.  The Agreement states that "Conaway-Legal LLC (the "Firm") has agreed to represent you (the "Client" or "You") in making a books and records request. *Id.* at 1. The Agreement was signed by "Bernard G. Conaway" and the Plaintiff.

4.      During the litigation Plaintiff communicated with Mr. Conaway and Clifford Rieders - Plaintiff's friend and personal attorney – almost entirely by email. *Third Am. Compl.* at ¶ 10; *Gabbay Dep.* at 37/24 to 38/4.

5.      Communication between Defendant. Conaway and Plaintiff was facilitated by email through Mr. Rieders.  *Conaway Dep.* at 29/14-22.

6.      Plaintiff used two email accounts to communicate with Defendant Conaway and Clifford Rieders: (1) jeffgabbay@gmail.com, and (2) jeff@argamantech.com. *Third Am. Compl.* at ¶¶ 33-35; *Conaway Dep.* at 28:21-22:7.

7.      Following almost two years of litigation, the Chancery case was settled on May 6, 2019. *Third Am. Compl.* at ¶ 9.

8.      On May 30, 2019, Defendant Conaway emailed Cupron's general and Delaware counsel to confirm that the pre-funding conditions were satisfied.  Defendant Conaway also provided wire instructions for the deposit of the settlement proceeds into Defendant Conaway Legal's WSFS Escrow account. **CL-001.**

9.      On May 31, 2019, Cupron wired the $444,990.00 settlement proceeds into Defendant Conaway Legal's WSFS Escrow Account. **CL-002**.

10.     Four days later, on June 3, 2019, Defendant Conaway requested direction from

Plaintiff regarding the transfer and distribution of the settlement proceeds. **CL-003**.

11.    On June 6, 2019, Defendant Conaway forwarded the Firm's Final Invoice for legal services. **CL-004-13**.  In that email, among other things, Defendant Conaway asked Plaintiff for "instructions on where, when and how [he] would like the settlement proceeds transferred to [him]."

12.    The following day Plaintiff acknowledged, by email, receipt of Defendant Conaway's June 6-email. **CL-014**. Of note Plaintiff relayed that "instructions for [the settlement proceeds] transfer" will be forthcoming." *Id*.

13.    On June 11, 2019, Plaintiff again told Defendant Conaway that he "will get back to [Mr. Conaway] on dispersal if (sic) funds." **CL-015**.

14.    On June 19, 2019, Mr. Rieders emailed Defendant Conaway a letter to ask, "if there is anything we can do to help in connection with the distribution." **CL-016**.

15.    On June 19, 2019, Defendant Conaway responded to Mr. Rieders telling him that "[Mr. Gabbay] hasn't given me instructions on how to transfer the settlement proceeds.  Please let me know if I missed something." **CL-017**.

16.    On June 20, 2019, Mr. Rieders emailed Defendant Conaway that he spoke to Plaintiff and that "Mr. Gabbay" is trying to decide the best way to proceed." He agreed to give Plaintiff "a bit of a boot" to deal with disbursement. **CL-018**.

17.    On June 25, 2019, Mr. Rieders relayed by email that that Plaintiff "is meeting with whomever he needs to meet with on Tuesday" (or 7/2/2019). **CL-022**.

18.    On June 25, 2019, Defendant Conaway emailed Plaintiff and asked him what he "would like me to do with the remaining settlement proceeds." **CL-023**.

19.    On July 1, 2019, Plaintiff responded to Defendant Conaway's June 25-email.  He

confirmed that he was meeting "financial advisor tomorrow" [being 7/2/1029]. **CL-024**.  He

further indicated that he would be "[b]ack to [Mr. Conaway] then." *Id*.

20.    On July 2, 2019, Defendant Conaway received several emails from Plaintiff.  The

first email, at 8:16 am ET, indicated that: "[My wife] and I sat with our financial advisor.  We have

signed the necessary forms, and you will be receiving from us in the next week or so (July 4th

weekend is delaying things) instructions for the transfer of our funds to an account in the USA.

**CL-025**.  Mr. Rieders was copied on this email.

21.    About an hour later, at 9:49 pm ET, Defendant Conaway received a second email

from Plaintiff that indicated: "After meeting with our financial advisor today, we agreed to wire

transfer the remaining settlement funds to my "affiliated company bank account in Hong Kong."

**CL-027**.

22.    At 12:22 pm ET, Defendant Conaway received an email from Plaintiff wherein he

asked that Defendant Conaway wire monies to a Hong Kong bank. **CL-031-32**.  Attached to that

email was a PDF containing the wiring instructions. *Id*.

23.    Defendant Conaway was aware that Plaintiff, and more specifically his

company/employer Argaman Tech, was involved with investors in China. *Conaway Dep*. at 46/17-

21.  This fact was confirmed by Plaintiff at his deposition. *Gabbay Dep*. at 23/7 to 24/14.

24.    At 1:12 pm ET, Plaintiff raised a concern, by email, stating "In anticipation of a

question that will be asked concerning the source of the Vupron (stet) funds we will need to present

proof of the origin of the funds. Can you please send me documentation that demonstrates the

source of the funds *i.e.* Cupron's purchase or our sale."**CL-034**.  At his deposition, Plaintiff

confirmed that he sent this email. *Gabbay Depo*. at 96/11 to 97/16.

25.    Within five minutes, Mr. Rieders responded to that email, declaring that the "[t]ax

authorities won't care where Cupron got the money." **CL-035**.  Mr. Rieders then followed up with another email asking, "U.S. or Hong Kong?" **CL-036**.

26.    At his deposition, Mr. Rieders testified that he posed the "US or Hong Kong" question to confirm that the settlement proceeds were to be transferred to the US or Hong Kong. Rieders Dep. at 55-8 to 56/8.  (Exhibit "E" to Appendix hereto).  For his part, at that time, Plaintiff also understood that Mr. Rieders was asking if the settlement funds were going to the US or Honk Kong.  *Gabbay Dep.* at 101/21 to 102/7.

27.    At 3:49 pm ET, Plaintiff responded to Mr. Rieder's "US or Hong Kong?" question stating the "USA thinks we are all drug dealers working with undeclared cash. We have to prove we are not!" **CL-040**.  In the past, Plaintiff had expressed to Defendant Conaway a similar sentiment about being treated like a drug dealer when wiring money.  In July 2017 he wrote "It's bad enough they treat me like a drug dealer in sending money out of the country." **CL-00269**.

28.    Plaintiff did not question, answer, rebut, or express any concern over the fact that Hong Kong was a potential site to wire the settlement funds. *Id*.  His only response was to complain about being treated like a criminal. *Id*.

29.    On July 5, 2019 – Defendant Conaway emailed Mr. Gabbay to confirm that the settlement funds were wired to the Hong Kong banks as directed. **CL-038-40**.

30.    On July 8, 2019, Plaintiff sent an email advising that the monies are not in his Hong Kong account. **CL-041**.  He continued, "I'm not sure why but I was told that the account is under audit at the moment, as a result of this any Incoming payment payment (sic) would be delayed or return (sic) to sender. **CL-041**.

31.    On July 10, 2019, Defendant Conaway received an email from Mr. Rieders asking whether he "heard anything from Mr. Gabbay." **CL-043**.  Defendant Conaway responded to Mr.

Rieders, explaining that "I wired the settlement funds to him last Friday" (7/5/2019). Defendant Conaway went on to explain that there was a problem with the Hong Kong bank account, and he was trying to recall the wire. *Id*.

32.     Plaintiff emailed new wire instructions to Defendant Conaway on July 15, 2019. **CL-047-48**.

33.     On July 16, 2019, Defendant Conaway emailed Plaintiff twice. Once to confirm that the wire was complete and the second email to forward the confirming wire documentation. **CL-049-51**.

34.     On July 18, 2019, Plaintiff emailed to tell Mr. Conaway that, "We finally got the wire instructions for the account. Kindly transfer all of the money in the account to the attached account." **CL-052-53**. Within an hour, Defendant Conaway responded, telling Mr. Gabbay that, "Am confused. The settlement proceeds were wired on Tuesday as you directed." **CL-054**.

35.     July 18, 2019 – Plaintiff responded stating: "Bernie, Sorry once again, I got the wrong Bernie, I think I need some vacations to settle down my head, too much thinking lately. So sorry for the confussion (sic)."[2] **CL-055**.

36.     On July 23, 2019, Plaintiff emailed an apparently encrypted document. **CL-056**. Defendant Conaway responds by telling him that he cannot open the document. **CL-057**. Plaintiff subsequently asked whether "the transfer made yet?" **CL-058**. Mr. Rieders responds by asking, "I thought it was done a while ago." **CL-059.**

37.     On July 25, 2019, Plaintiff emailed to tell Defendant Conaway, "You will receive instructions for transfer via fax this morning with my signature as authorization (sic). No files that can't be opened." **CL-060.**

─────────────────

[2] The reference to "once again" relates to prior emails from Plaintiff wherein Defendant Conaway was inadvertently copied.

38.     On July 26, 2019, Defendant Conaway received a fax from Plaintiff.  The facsimile contains a different set of wire instructions. This fax was the first-ever received from Plaintiff. **CL-061-62.**  Plaintiff writes to advise that, "For security reasons I am sending you the transfer details via fax and not email.  Please acknowledge when you have received the fax with my signature." **CL-063.**

39.     On July 27, 2019, Defendant Conaway responded to Plaintiff's email telling him, "I received your fax; however, I am confused by it.  Upon your instructions, I previously wired all of the remaining settlement proceeds to your Hong Kong bank.  Hence, I have nothing to wire.  Please help me understand what you need me to do." **CL-064.**  Plaintiff responds by asking: "What Hong Kong Bank?" *See* **CL-065.** One minute later, Plaintiff emails Defendant Conaway to tell him that, "You received a false email from a hacker." **CL-066.**

40.     Plaintiff's jeff@argamantech.com email account was hacked twice between June 1, 2019, and August 1, 2019. *Gabby Dep.* at 139/17-24 (referring to a July/August hack) and 48/9 to 49/7 (discussing bringing the computer vendor before learning of the July/August hack).

41.     For the period between June 1, 2019, and August 1, 2019, Plaintiff did not inform Messrs. Conaway or Rieders that his jeff@argamantech.com email account had been hacked.

42.     Plaintiff's employment with Argaman ended in November 2021.  Litigation was filed on June 20, 2020. **D.I.** 1. Upon leaving Argaman's employment, Plaintiff returned his company computer. *Gabbay Dep.* at 57/20 to 60/18.  In doing so, Plaintiff lost access to, and is unable to produce, relevant emails, communications with investment advisors, communications with Mr. Rieders, communication with a vendor that addressed the email hacking issues, communications with investigating agencies. *Plaintiff's Responses to Defendant's Second Request for Production of Documents,* Responses 1-6.  (Exhibit "F" to Appendix hereto).

## D.    ARGUMENT

*Standard of Review*

Defendants move for summary judgment under FEDERAL RULE OF CIVIL PROCEDURE 56. Summary judgment pursuant to RULE 56 is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is only genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).

When considering a summary judgment motion, the Court must "draw all reasonable inferences in favor of the nonmoving party, but it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Williams v. West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [*3] [by the moving party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1). "[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there

is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

I.    *Under Delaware Law, a Claim for Breach of Contract Must Allege the Breach of an Obligation Imposed by the Contract – Count 1*

To establish a breach of contract three elements must exist: (1) the existence of the contract, whether express or implied, (2) breach of an obligation imposed by that contract, and (3) resultant damage to the plaintiff. *VLIW Tech., L.L.C. v. Hewlett- Packard Co.*, 840 A.2d 606, 612 (Del. 2003). The operative complaint here rests upon the existence of a retainer agreement ("Agreement") – a contract between defendant Conaway Legal and Mr. Gabbay.

Mr. Gabbay fails to point to a single affirmative obligation imposed by the contract that was breached. The Agreement obligated Conaway Legal to "represent you (the "Client" or "You") in making a books and records request pursuant to 8 DEL. C. § 220 against Cupron, Inc., a Delaware corporation." There is no evidence, nor any allegation that Conaway Legal breached an obligation arising under the Agreement. Accordingly, Count 1 of the Complaint must be dismissed.

II.    *The Plaintiff has No Contractual Relationship with Defendant Bernard Conaway – Count 1*

As noted above, to maintain a breach of contract action an enforceable contract must exist. Plaintiff alleges that a contract exists with defendant Bernard Conaway by way of the Agreement. This assertion is articulated in ¶ 43: "Defendant Conaway made no distinction, in his dealings with Mr. Gabbay, between himself personally as a professional, an attorney, and his LLC, notwithstanding the signed fee agreement."

The Agreement denotes the parties as follows:

Under the RULES OF PROFESSIONAL CONDUCT governing Delaware lawyers, I am required to set forth in writing the terms upon which Conaway-Legal LLC (the

11

"Firm") has agreed to represent you (the "Client" or "You") in making a books and records request pursuant to 8 DEL. C. § 220 against Cupron, Inc., a Delaware corporation.

Specifically, this letter shall serve as an agreement between the Client and the Firm, whereby the Client has requested that the Firm provide it with legal representation and the Firm has indicated a willingness to provide the representation described herein, subject to the terms and conditions of this Agreement.

**D.I.** at Exh. 1, p. 1.

Plaintiff asserts that defendant Bernard Conaway is a party to the Agreement because he signed the Agreement on behalf of defendant Conaway Legal. Specifically, at ¶¶ 7, 8, and 93. Plaintiff retained the "services of Bernard G. Conaway and Conaway-Legal LLC" and "Jeff Gabbay executed an attorney-client representation agreement with Bernard Conaway."

The Agreement is clear as to the identity of the contracting parties. Plaintiff does not argue that the Agreement is ambiguous. Nor did the Plaintiff develop any evidence to support their allegations. At bottom, the Plaintiff cannot ignore the obvious. Summary Judgment as to Count I against Defendant Bernard Conaway is appropriate.

> III.    *The Breach of Bailment Must be Dismissed Because the Plaintiff Fails to Allege Return of the Property and Fails to Develop Evidence that the Defendants Failed to Exercise Ordinary Care to Safeguard the Property - Counts III and VI[3]*

Plaintiff alleges that Defendants are liable because a bailment existed over the settlement funds. D.I. 32 at ¶¶ 63-66. The claim rests upon allegations that "Conaway took no action whatsoever to safeguard the funds, to protect them from being stolen by a hacker, or to deliver said funds as he reasonably should have understood would be the case." *Id.* at ¶ 65.

Under Delaware law a bailment is the "delivery of personal property by one person, the

---

[3] Count VI alleges that "Defendants, by insisting that the funds be placed in their account for distribution, undertook responsibility and duty of bailment and fiduciary duty." **D.I**. 32, at ¶ 83. This count seems to be an amalgam of Count III (bailment) and Count II (fiduciary duties). Defendants have moved for summary judgment on both counts.

bailor, to another, the bailee, who holds the property for a certain purpose, usually under an express or implied-in-fact contract." *Devincentis v. European Performance, Inc*., 2012 LEXIS 200, at *9 (Del. Super. Apr. 17, 2012). Such a bailment arises when the bailor delivers the property to the bailee for some purpose after which the property is to be returned to the bailor, the original party. *Beattie v. Beattie*, 786 A.2d 549, 555 (Del. Super. 2001). For a valid cause of action, the plaintiff must allege the element of return, namely, the return of the property to the bailor. *Devincentis*, at *1.

The property at issue, the settlement monies, was not delivered to Defendant Conaway Legal for the purpose to be returned to the original party. The settlement monies were delivered by the corporation in the Chancery Case to Defendant Conaway Legal as counsel for Plaintiff's counsel for the purpose of settling the underlying case. The monies were never going to be returned to the corporation. Therefore, since Plaintiff has failed to allege either that he was the bailor or that the settlement monies were to be returned to the corporation or anyone for that matter, he has not brought a valid claim of breach of bailment.

Alternatively, if a bailment did exist, the claim fails because under Delaware law a bailment must involve the transfer of personal property. *Waters v. Del. Moving & Storage, Inc.*, 300 A.3d 1 (Del. Super. 2023). Finally, Plaintiff offers no evidence that Defendants failed to exercise ordinary care in the handling of the settlement funds.   Summary judgment of Counts III and VI is appropriate.

IV.    *Count IV of The Complaint Fails as a Matter of Law and Fact.*

The Plaintiff alleges that:

68.    Defendant Conaway as aforesaid was negligent and is guilty of wanton and reckless behavior in sending his client's funds to a hacker after being informed by his client that said funds would be sent to the United States, New York or New

13

Jersey.[4]

69.    Defendants acted recklessly and in disregard of his client's interests by responding to an obviously foreign wiring instruction from Hong Kong, although Conaway was intimately familiar with his client's language skills and wishes as to where the money should be sent.

71.    The conduct of Conaway and Conaway-Legal LLC in not carrying insurance and lying about the fact that he did not have insurance further represented a demonstration of Conaway's intent, which was in reckless disregard of the interests of his client.

D.I. 32, at ¶¶ 68, 69 and 71.

This claim appears to be based on negligence yet asserts conduct for an award of punitive damages.[5] If it is, then to recover punitive damages, Plaintiff must develop evidence that establishes that Defendant's conduct was "outrageous," because of "evil motive" or "reckless indifference to the rights of others." *Jardel Co. v. Hughe*s, 523 A.2d 518, 529 (Del. 1987) citing RESTATEMENT (Second) OF TORTS § 908, comment b (1979).  Mere negligence is not enough. Plaintiff did not develop any evidence that Defendants' conduct was "outrageous," because of "evil motive" or "reckless indifference to the rights of others." As such, to the extent that Count IV seeks punitive damages, summary judgment is appropriate.

---

[4] It is worth noting Plaintiff's own confusion.  The complaint alleges that the Defendants ignored the Plaintiff's instruction that the settlement funds were to be "wired to a bank in Pennsylvania or New Jersey." **D.I.** 32, at ¶ 49.  Four paragraphs later, at ¶ 53, the Plaintiff asserts that the Defendants were told that the settlement "money would be sent to a bank in New York or New Jersey."  This inconsistency is ironic especially considering that Plaintiff's only evidence that he directed the Defendants to deposit the settlement funds in a US bank was a single email on July 2, 2019. **CL**-025.  A subsequent email from the Plaintiff, on the same day, directed that the settlement funds should be deposited in "affiliated company bank account in Hong Kong." **CL**-027.

[5] Punitive damages is not a standalone claim. *E. I. Du Pont de Nemours & Co. v. Admiral Ins. Co.*, C.A. No. 89C-AU-99, 1994 Del. Super. LEXIS 346, *23 (Aug. 3, 1994).

V.      *The Estoppel Claim Fails to Allege Legal Elements Necessary to Support the Claim – Unnumbered Count*

Plaintiff alleges that Defendants are estopped from denying the negligence, breach of fiduciary duty, breach of contract, and breach of bailment claims. D.I at 32, at ¶¶ 74-80. Under Delaware law "[e]quitable estoppel applies when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment. To establish estoppel, it must be shown that the party claiming estoppel lacked knowledge of the truth of the facts in question; relied on the conduct of the party against whom estoppel is claimed; and suffered a prejudicial change of position as a result of his reliance. Furthermore, the reliance upon the conduct . . . must be reasonable and justified under the circumstances. *U. S. Bank Nat'l. v. Swanson*, 2006 Del. LEXIS 671, 918 A.2d 339, *5-6 (Del. 2006).

Here, Plaintiff fails to allege any facts that would support a valid claim of estoppel. No reliance is alleged. No change in position is alleged. No lack of knowledge is alleged, and no act demonstrating reliance is alleged. Therefore, the "estoppel claim" should be dismissed.

VI.     *Plaintiff Cannot Pierce the Corporate Veil – Count VII*

Plaintiff alleges that "Defendant Conaway, attempts to hide behind an LLC, although at all times relevant hereto he represented that he was acting as a professional, an attorney, in the handling of his client's case and settlement funds." **D.I.** 32, at ¶¶ 89-95.  Further indiscretions justifying the piercing the corporate veil, according to the Plaintiff, include Defendant Conaway was a sole practitioner, "operating out of my suitcase,[6]" "Defendant Conaway's email was bgc@conaway-legal.com, and did not utilize the LLC designation, "an attorney, [stet] is not entitled to utilize an LLC to protect himself from personal liability, the retainer letter lists the LLC, it is signed by Bernard G. Conaway alone, and "Bernard G. Conaway dealt with an LLC as though

---

[6] Defendant Conaway has no recollection of making the "operating out of my suitcase."

he were a sole entrepreneur, acting in the professional capacity of an attorney." D.I.32, at ¶¶ 89-95.

In *Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, No. 2020-0194-KSJM, 2022 Del. Ch. LEXIS 50 (Ch. Mar. 2, 2022).  In *Verdantus*, the Chancery Court of Delaware addressed

> Veil piercing is a tough thing to plead and a tougher thing to get, and for good reason.  Delaware is in the business of forming entities, and so "Delaware public policy does not lightly disregard the[ir] separate legal existence[.]" The factors a court considers when determining whether to pierce the corporate veil are "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder."13Link to the text of the note Courts have also required a veil-piercing claim to demonstrate "an overall element of injustice or unfairness."
>
> Counterclaim-Plaintiffs argue that veil-piercing is appropriate because Phillips is the sole owner of Verdantus and that he observed few if any corporate formalities. But that allegation could be said of most single-member LLCs, particularly given the few statutorily mandated formalities imposed on those entities. This is not the exceptionally rare stuff of veil-piercing.

*Id*. at *3-4. *See also Pawley Petrol. Inc. v Continental Oil Co.*, 239 A2d. 629, 633 (Del. 1968)(veil piercing only available where fraud, contravention of law or contract, or public wrong is shown).

Plaintiff did not develop a single shred of evidence of the kind set out in *Verdantus* sufficient to support a basis to pierce the corporate veil.  Consequently, summary judgment on the veil piercing claim is appropriate.

> VII.    *At All Relevant Times, Defendant Conaway was Acting Within the Scope and Course of His Employment with Defendant Conaway Legal.*

A limited liability company is a legal entity which can act only through the actions of living persons. 3A FLETCHER CYCLOPEDIA CORPORATIONS § 1134, p. 265. Pursuant to 18 Del. C. § 18-303(a), a member or manager of a limited liability company is not personally liable for the debts

and liabilities of the company. *See also Thomas v. Hobbs*, 2005 Del. Super. LEXIS 164, * 5 (Del. Super. April 27, 2005). In general, an employee is not individually liable for actions taken on behalf of the employer so long as those actions were within the scope and course of the employee's employment related duties. Rather, under the doctrine of *respondeat superior*, the employer is responsible for the employee's acts performed within the course and scope of that employment. *See* RESTATEMENt (Second) AGENCY § 219(a) ("A master is subject to liability for the torts of his servants committed while acting in the scope of employment"); *Sherman v. State Dep't of Pub. Safety*, 190 A.3d 148, 157-58 (Del. 2018).

Delaware has adopted RESTATEMENT, Second, OF AGENCY § 228 which defines scope and course of employment. *Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1200 (Del. 2015) ("In determining whether tortious conduct is within the scope of employment, Delaware courts will consider the factors outlined in the RESTATEMENt (Second) OF AGENCY.")

Section 228 identifies the criteria for determining whether an employee was acting in the scope and course of their employment:

(1)    Conduct of a servant is within the scope of employment if, but only if:

    (a)    It is of a kind he is employed to perform;

    (b)    it occurs substantially within the authorized time and space limits;

    (c)    it is actuated, at least in part, by a purpose to serve the master . . .

(2)    Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

A review of the allegations in the complaint reveals that Plaintiff does not allege that Defendant Conaway ever acted outside the scope and course of his employment. Quite the contrary. At ¶ 3, Plaintiff asserts that "[a]t all times herein mentioned, Defendant Conway was the

17

president and agent of the Defendant Conaway-Legal LLC, and in doing the things herein alleged was acting within the scope of such employment and agency." **D.I**. 32 at ¶ 3. In their answer the Defendants admitted this allegation stating "[a]dmitted that Defendant Conaway was, at all times mentioned herein, acting solely within the scope of his employment with Defendant Conaway-Legal LLC." **D.I**. 13 at ¶ 3 (answer).   Moreover, the record is devoid of any evidence that undermines the allegations set out in ¶ 3.   Therefore, Defendant Conaway is entitled to summary judgment on the issue of his status as an employee of Defendant Conaway Legal and thereby relieved of individual liability.

>    **VIII.**   *The Plaintiff's Breach of Fiduciary Claim and Breach of Contract Claim Must be Dismissed as Duplicative of his Negligence Claim – Count II and VI.*

In Count II, Plaintiff alleges that Defendants breached a fiduciary duty by "ignoring the instructions of [Plaintiff] to wire the money to a bank in New York or New Jersey with instructions to follow… and [instead] sent the money to a Hong Kong [hacker]."  Third Amended Complaint at ¶60.  In Count I, Plaintiff alleges a breach of contract[7] relating to the wiring of funds to a Hong Kong account.  *Id*. at ¶55.  In Count IV, Plaintiff alleges that Defendants were negligent in "sending his clients' funds to a hacker after being informed by his client that said funds would be sent to the United States, New York or New Jersey." *Id*. at ¶68.  While Defendants deny these allegations, the allegations are based on the same conduct and are duplicative.  The breach of fiduciary duty and contract claim must be dismissed.

In *Sokol Holdings, Inc. v. Dorsey & Whitney, LLP*, 2009 Dl. Ch. LEXIS 142 (Del. Ch. Aug. 5, 2009), then Vice Chancellor Strine considered a motion by the Defendants to determine

---

[7] This Count also alleges breach of express or implied warranty.  *See e.g.* ¶47.  Plaintiff withdrew any claim for breach of warranty in his response to Defendants' Motion to Dismiss.  *See* D.I. 40 at ¶10.

its subject matter jurisdiction over a claim brought by a client against its former lawyer.   In declining jurisdiction, the court held simply because Plaintiff "styled one of its counts as breach of fiduciary duty" did not "transmogrify legal malpractice" into a claim for breach of fiduciary duty.  Id. at *17.  The court determined "at base" Plaintiff's claims were for legal malpractice. Id. *See also Cohen v. Horn*, 2022 U.S. Dist. LEXIS 95455 (D.N.J. May 27, 2022) (and collecting cases and quoting *Amboy v. Bancorp. v. Bank Adv. Group*, 432 F.App'x 102, 111 (3d Cir. 2011) (court dismissed with prejudice Plaintiff's breach of contract and breach of fiduciary claims as redundant/duplicative of the professional negligence claim).  *See also Arunachalan v. Pazuniak*, 2017 U.S. Dist. LEXIS 146370 at 32-33 (D. Del. Sept. 11, 2017)("under Delaware law, Plaintiff may not assert both tort and contract claims for the same alleged legal malpractice").

## CONCLUSION

**WHEREFORE**, the Defendants respectfully request that the Court grant summary judgment as requested herein and award such other and further relief as may be warranted by the law, equity and the facts.

Date: June 21, 2024

<div style="margin-left:40%">

**SEITZ, VAN OGTROP & GREEN, P.A.**

/s/ *R. Karl Hill*
R. Karl Hill, Esquire (2747)
222 Delaware A venue, Suite 1500
Wilmington, DE 19801
Tele: (302) 888-7604
Email: *khill@svglaw.com*

*Attorneys for the Defendants*

</div>