# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY GABBAY, ) | |
| ) | CA No. 1:20-cv-00743-JLH |
| Plaintiff ) | |
| ) | |
| vs. ) | |
| ) | JURY TRIAL DEMANDED |
| BERNARD G. CONAWAY, ) | |
| ESQUIRE AND ) | |
| CONAWAY-LEGAL LLC ) | |
| ) | |
| Defendant ) | |

## PLAINTIFFS' ANSWERING BRIEF IN SUPPORT OF DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THE POLIQUIN FIRM, LLC**

/s/ Ronald G. Poliquin, Esquire
Ronald G. Poliquin, Esquire
Bar ID No.: 4447
1475 South Governors Avenue
Dover, DE 19904
(302) 702-5501
*Attorney for Plaintiff Jeffrey Gabbay*

Date: July 15, 2024

i

# **TABLE OF CONTENTS**

NATURE AND STAGE OF PROCEEDINGS ..........................................................................1

SUMMARY OF ARGUMENT ...................................................................................................2

STATEMENT OF FACTS ……………….…………………………………….......……..4

ARGUMENT ..................................................................................................................................4

    I.      STANDARD OF REVIEW......................................................................................4

    II.    PLAINIFF ALLEGES A PROPER BREACH
          OF CONTRACT CLAIM …………………………………………………… 5

    III.   DEFENDANT CONAWAY CONCEDED TO OWING A
          FIDUCIARY DUTY IN REGARD TO PLAINTIFF'S FUNDS ………7

    IV.   PLAINIFF ALLEGES A PROPER BAILMENT CLAIM
          AGAINST DEFENDANTS ……………………………………….….. 9

    V.    WILFUL AND WANTON CONDUCT IS CONSIDERED A
          JURY QUESTION ……………………………………………………..... 11

    VI.   PLAINTIFF STATES A VALID PROMISSORY
          ESTOPPEL CLAIM ……………………………………………..… 13

    VII.  DEFENDANT LLC IS A MERE ALTER
          EGO OF DEFENDANT ……………………………………….….. 13

CONCLUSION …………………………….……………………………………………14

# **TABLE OF CITATIONS**

**Cases**                                                                                           **Page**

*Anderson v. Liberty Lobby*, Inc.
477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ……………………..... 4

*Artoss, Inc. v. Artoss GmbH*
2021 U.S. Dist. LEXIS 32880, 2021 ………………………………………………... 8

*Clemens v. ExecuPharm Inc.*
2022 U.S. App. LEXIS 24808 (September 2, 2022) ………………………….....… 5

*Country Life Homes, LLC v. Gellert Scali Busenkell & Brown LLC*, 259 A.3d 55, (Del. 2021) …………………………………………………….. 13

*Estate of Rae v. Murphy*
2006 Del. Super. LEXIS 123 ……………………………………..……………. 11, 12

*Furek University of Delaware*
1986 Del. Super. LEXIS 1045, (1986) ……………………………………………….. 11

*Gelof v. Prickett, Jones Elliott*
C.A. No. 4930-VCS (Del. Ch. Feb. 19, 2010) …………………………………….. 7, 8

*Integrated Water Resources, Inc. v. Shaw Environmental, Inc.* (*In re the IT Group, Inc.*)
361 B.R. 417 (Bankr. D. Del. 2007) …………………………………………….… 5

*Lord v. Souder*
748 A.2d 393 (Del. 2000) ……………………………………………………….. 13

*Marten v. Godwin*
499 F.3d 290 (3rd Cir. 2007) …………………………………………………….... 4

*Merkle v. Upper Dublin Sch. Dist.*
211 F.3d 782, 788 (3d Cir.2000) ……………………………………………….… 4

*Pazuniak Law Office LLC v. Pi-Net Int'l, Inc*
2016 Del. Super. LEXIS 309 ………………………………………………….… 10

*Peterson v. Lehigh Valley Dist. Council*
676 F.2d 81, 84 (3d Cir.1982) ……………………………………………………. 4

*Reedy v. Evanson*
615 F.3d 197 (3rd Cir. 2010) …………………………………………………….… 4

*Rich Realty, Inc. v. Potter Anderson & Corroon*
LLP, 2011 Del. Super. LEXIS 91, 2011 ………………………………………….. 7

*Trustees, Vil. of Arden v. Unity Constr.*
C.A. No. 15025 (Del. Ch. Jan. 26, 2000) ……………………………………….. 14

*United States ex Rel. Clark v. Anderson*
356 F. Supp. 445 (D. Del. 1973) ………………………………………………..... 9

**Rules and Statutes**

FED. R. CIV. P.
56(c)(2)………………………………………………………………..…………... 4

## **NATURE AND STAGE OF PROCEEDINGS**

This action was filed on June 20, 2020. The initial complaint and each iteration thereafter asserted various claims sounding in tort and contract. A Third Amended Complaint was filed on July 27, 2022. (D.I. 32)

Defendant filed a Motion to Dismiss on August 15, 2022. (D.I. 36) Plaintiff filed its response to said Motion to Dismiss on September 16, 2022. (D.I. 40) The Court never ruled on that Motion.

This is the Plaintiff's Answering Brief in Support of Denying Defendants' Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

1. Contrary to Defendants' Brief, Plaintiff specifically alleges that "Defendants breached a direct contractual responsibility in connection with the handling of Plaintiff's settlement funds. Also, Plaintiff alleges "In the alternative, Defendants breached an implied duty in connection with the safe handling of Plaintiff's settlement funds." See ¶45-46 of Third Amended Complaint.

2. The settlement funds were the property of Plaintiff. In bailment, there is an obligation on the part of the party holding the funds to protect said property which he knows belongs to another and said holder of funds is liable in negligence or, in the alternative, without regard to fault.

3. The determination of whether Defendants' actions constitute willful and wanton conduct involves subjective elements such as intent and state of mind, making it inappropriate for summary adjudication.

4. Plaintiff states a valid promissory estoppel claim as Conaway promised Gabbay to properly deliver his settlement funds from his trust account. Plaintiff Gabbay relied on Conaway's promise to his detriment and lost $426,058.55.

5. There is no distinction between Defendant Conaway-Legal LLC and Defendant Conaway as separate and distinct entities.

6.      Any and all additional arguments regarding bailment, breach of fiduciary duty, and breach of contract are all incorporated by the individual arguments contained here.

7.      There is no argument that Count XIII of Plaintiff's complaint for negligence be dismissed.

## STATEMENT OF FACTS

Plaintiff incorporates its Concise Statements of Facts along with its Rebuttal to Defendants' Concise Statement of Facts, filed contemporaneously with this Answering Brief.

## ARGUMENT

### I. STANDARD OF REVIEW

Summary judgment is only proper when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law. *Reedy v. Evanson* 615 F.3d 197 (3rd Cir. 2010) citing FED. R. CIV. P. 56(c)(2). This Court must view all of the facts in the light most favorable to the non-moving party, who is "entitled to every reasonable inference that can be drawn from the record." *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788 (3d Cir.2000). "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982). Plaintiffs' evidence "is to be believed, and all justifiable inferences are to be drawn in her favor." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Marten v. Godwin*, 499 F.3d 290 (3rd Cir. 2007).

## II. PLAINIFF ALLEGES A PROPER BREACH OF CONTRACT CLAIM.

A statement of a claim for breach of contract must include allegations of breach of an obligation under the contract and resulting damage to the plaintiff. *Integrated Water Resources, Inc. v. Shaw Environmental, Inc.* (*In re the IT Group, Inc.*), 361 B.R. 417 (Bankr. D. Del. 2007)

The Third Circuit has held that a breach of contract claims exists in terms of the obligation of a company to safeguard a person's personal and confidential information. *Clemens v. ExecuPharm Inc.*, 2022 U.S. App. LEXIS 24808 (September 2, 2022) (Greenaway, Jr., C.J.)

In *Clemens*, Clemens was an ex-employee of a company to whom she had to give all of her confidential information. The company promised it would protect that information. A hacker got into the information and published it on the Dark Web. The Court decided Clemens had standing to assert her contract tort and secondary contract claims. In return for her work and promises, the company had promised to safeguard the information, which it did not. She alleged a future injury as well, risk of identity theft or fraud that is sufficiently imminent. The breach was conducted by a known hacking group.

Defendants do not dispute that a valid agreement exists between Defendants and Plaintiff i.e. the incorporated retainer agreement. Plaintiff's Complaint specifically states "Plaintiff and Defendants entered into an Agreement, attached as

5

Exhibit 1, in which Jeffrey Gabbay retained the services of Bernard G. Conaway and Conaway-Legal LLC as set forth in Agreement No. 3." See ¶7 of Third Amended Complaint.

Contrary to Defendants' Motion, Plaintiff specifically alleges that "Defendants breached a direct contractual responsibility in connection with the handling of Plaintiff's settlement funds. Also, Plaintiff alleges "In the alternative, Defendants breached an implied duty in connection with the safe handling of Plaintiff's settlement funds." See ¶45-46 of Third Amended Complaint.

These claims are further supported by the well pled allegations in Plaintiff's Complaint including:

-Failing to wire the money to an account in the United States as instructed by Plaintiff. (¶4 of Counter Statement of Facts)

-Not having a system or provision for checking the veracity of emails by voice communication after being given instructions by the hacker to send the Gabbay money to a bank in Hong Kong. (¶8 of Counter Statement of Facts)

-Sending the funds to the Hong Kong hacker twice without verifying the veracity of the request. (¶5 of Counter Statement of Facts)

Defendants breached their contractual obligations expressly, which were implied…by wiring Gabbay's settlement funds to a hacker in Hong Kong without any inquiry, without calling Gabbay and ignoring explicit warning signs. (¶9 of

6

Counter Statement of Facts)

As his attorneys, Defendants had an implied and expressed contractual obligation in connection with the safe handling of Plaintiff's settlement funds. As a result of breaching that contractual obligation. Defendants caused Plaintiff to lose $426,058.55. Similar to the *Clemens* case, Plaintiff Gabbay alleges that defendants had an obligation to safeguard an individual's personal and confidential information and breached such.

### III. DEFENDANT CONAWAY CONCEDED TO OWING A FIDUCIARY DUTY IN REGARD TO PLAINTIFF'S FUNDS.

The hallmark of a fiduciary relationship is that one person has the power to exercise control over the property of another as if it were her own. See *Gelof v. Prickett, Jones Elliott*, C.A. No. 4930-VCS (Del. Ch. Feb. 19, 2010). The attorney is a 'trustee for his client.' *In re Kennedy*, 442 A.2d 79 (Del. 1982) It necessarily follows that an attorney acts as a fiduciary when he deals with the funds of his client." *In re Goldstein*, 46 Del. 450 (Del. 1951) Courts have previously decided that an attorney may be liable for claims involving breach of fiduciary duty in dealing with client trust funds. See *Gelof*. An attorney takes on fiduciary duties in the case of client trust accounts. *Rich Realty, Inc. v. Potter Anderson & Corroon LLP*, 2011 Del. Super. LEXIS 91, 2011 WL 743400

Here, Plaintiff's breach of fiduciary duty claims are separate from its breach of contract claims. Therefore, it is possible that Plaintiff 's breach of contract claim

7

could fail while Plaintiff's breach of fiduciary claim could succeed. *Artoss, Inc. v. Artoss GmbH*, 2021 U.S. Dist. LEXIS 32880, 2021 WL 706345

Defendant Conaway was in control of a client's property i.e. trust funds. In *Gelof*, the Delaware Chancery Court recognized a fiduciary duty claim when attorneys were in control of client accounts. "The attorney-client relationship does not raise the same concerns. Outside of narrow circumstances — such as in the case of client trust accounts…". *Id*. During his deposition, defendant Conaway acknowledged having a fiduciary duty for the handling of any of Mr. Gabbay's property, i.e. settlement funds. (¶17-18 of Counter Statement of Facts)

Conaway stated unequivocally "I owed a fiduciary duty for the handling of any of Mr. Gabbay's property, including funds." In addition, Conaway admitted to owing a fiduciary duty to act on his client's direction. *Transcript of Conaway Deposition* attached as Exhibit 1. Conaway stated, "I understood my fiduciary responsibility to pay attention to my client's direction." (¶17-18 of Counter Statement of Facts) Gabbay also took responsibility making a mistake transferring the funds. (¶27 of Counter Statement of Facts)

Here, Conaway insisted that the settlement funds from the stock buyout be sent to his trust account for distribution. (¶2-3 of Counter Statement of Facts) In so doing, Attorney Conaway created a fiduciary duty. A majority of the money placed in Conaway's account, at his insistence, were intended for other people,

8

including his client Gabbay. (¶2-3 of Counter Statement of Facts)

Defendants breached that fiduciary duty by ignoring the instructions of Gabbay to wire the money to a bank in New York or New Jersey, with instructions to follow, and rather sent the money to Hong Kong without consulting with or checking with Gabbay. (¶4 of Counter Statement of Facts)

### IV.  PLAINIFF ALLEGES A PROPER BAILMENT CLAIM AGAINST DEFENDANTS.

An attorney…may hold money for a client in the capacity of bailee, fiduciary or debtor, and when he misappropriates the funds in the capacity of a bailee. *United States ex Rel. Clark v. Anderson*, 356 F. Supp. 445 (D. Del. 1973) (reversed on other grounds)

Under the Delaware Rules of Professional Conduct, specifically Rule 1. 15, a lawyer is required to hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property. This includes settlement funds, which must be kept in a separate account designated solely for funds held in connection with the practice of law in Delaware Del. Rules of Prof'l Conduct 1.15, Safekeeping property.. This rule establishes the attorney's role as a fiduciary and bailee, responsible for safeguarding the client's funds.

9

Additionally, case law supports this fiduciary role. In "*In re Siegel*," the attorney was found to have violated several professional conduct rules, including Rule 1. 15(b), for failing to timely distribute settlement funds and failing to communicate with the client about the status of those funds *In re Siegel*, 47 A.3d 523 (Del. 2012). This case underscores the attorney's duty to properly manage and account for client funds, further affirming the attorney's role as a bailee. Moreover, in *Pazuniak Law Office LLC v. Pi-Net Int'l, Inc.*, that court emphasized the importance of identifying and appropriately safeguarding client funds 2017 Del. Super. LEXIS 419. This reinforces the attorney's responsibility as a bailee to protect and manage the client's settlement funds. In conclusion, Delaware law and professional conduct rules clearly establish that an attorney acts as a bailee for a client's settlement funds, with specific duties to safeguard, manage, and account for those funds appropriately.

Delaware law and professional conduct rules clearly establish that an attorney acts as a bailee for a client's settlement funds, with specific duties to safeguard, manage, and account for those funds appropriately. Defendants argue that a bailment does not exist because the funds were received from Plaintiff to begin with. However, at the time Defendants received the funds, the settlement funds were in fact, the property of Plaintiff. Defendant Conaway did not exercise the duty required in a bailment relationship. In bailment, there is an obligation on

the part of the party holding the funds to protect said property which he knows belongs to another and said holder of funds is liable in negligence or, in the alternative, without regard to fault.

Defendants argue that a bailment does not exist because the funds were received from Plaintiff to begin with. However, at the time Defendants received the funds, the settlement funds were in fact, the property of Plaintiff. After taking possession of Plaintiff's property i.e. settlement funds, Defendants did not exercise the duties required in a bailment relations. In bailment, there is an obligation on the part of the party holding the funds to protect said property which he knows belongs to another and said holder of funds is liable in negligence or, in the alternative, without regard to fault.

### V. WILFUL AND WANTON CONDUCT IS CONSIDERED A JURY QUESTION.

In Delaware, the determination of wilful and wanton conduct often involves subjective elements such as intent and state of mind, making it typically inappropriate for summary adjudication. For instance, in *Furek v. University Of Delaware,* the court noted that due to the intensely subjective nature of wanton conduct, it is not usually suitable for summary judgment, especially when intent and knowledge are in question. *Furek v. University of Delaware*, 1986 Del. Super. LEXIS 1045, 1986 WL 2837. Similarly, in *Estate of Rae v. Murphy*, the court

11

emphasized that whether conduct rises to the level of wilful or wanton negligence is typically a question for the jury, unless no reasonable person could conclude otherwise based on the facts *Estate of Rae v. Murphy*, 2006 Del. Super. LEXIS 123.

Here, there is no dispute that Defendant Conaway as aforesaid was negligent and is guilty of wanton and reckless behavior in sending his client's funds to a hacker after being informed by his client that said funds would be sent to the United States, New York or New Jersey. Defendants acted recklessly and in disregard of his client's interests by responding to an obviously foreign wiring instruction from Hong Kong, although Conaway was familiar with his client's language skills and wishes as to where the money should be sent. Conaway made no attempt whatsoever to verify where he was sending the money or why he was sending it to Hong Kong. After making such mistake, Conaway promised he would remedy the situation and that he had insurance to cover his mistake. Conaway lied on both grounds. The conduct of Conaway and Conaway-Legal LLC in not carrying insurance and lying about the fact that he did not have insurance further represented a demonstration of Conaway's intent, which was in reckless disregard of the interests of his client. (¶24-28 of Counter Statement of Facts)

## VI. PLAINTIFF STATES A VALID PROMISSORY ESTOPPEL CLAIM.

"To prevail on a promissory estoppel claim, a plaintiff must establish that: (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise. *Lord v. Souder*, 748 A.2d 393 (Del. 2000) Here, defendant Conaway insisted that the settlement funds from the stock buyout be sent to his trust account for distribution. Plaintiff detrimentally relied on that insistence. Conaway promised Gabbay to properly deliver his settlement funds. Gabbay gave Conaway explicit instructions that he would send wiring instructions to deliver the funds to a United State bank in New York or New Jersey. Instead, Defendants delivered the funds to a Honk Kong hacker on not once but two occasions. Plaintiff Gabbay relied on Conaway's promise to his detriment and lost $426,058.55. Defendant Conaway paid himself from the settlement funds before he sent the funds to the Hong Kong hacker. An injustice would occur if the promise were not enforced. (¶2-3 of Counter Statement of Facts)

## VII. DEFENDANT LLC IS A MERE ALTER EGO OF DEFENDANT.

Both Defendant Conaway and Conaway-Legal LLC care be sued for legal malpractice. It is settled law in Delaware that to prevail on a legal negligence

13

claim, the plaintiff must establish three elements: (a) the employment of the attorney; (b) the attorney's neglect of a professional obligation; and (c) resulting loss. *Country Life Homes, LLC v. Gellert Scali Busenkell & Brown, LLC*, 259 A.3d 55, (Del. 2021)

"A court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner." Of course, common management of two entities does not, by itself, justify piercing the corporate veil." *Trustees, Vil. of Arden v. Unity Constr.*, C.A. No. 15025 (Del. Ch. Jan. 26, 2000)

Here, there is no doubt that Defendant Conaway was employed as Plaintiff's sole attorney. Conaway Legal LLC is a mere alter ego of its owner. Conaway Legal LLC had one attorney, the Defendant. In addition, all the actions alleged were taken by one individual, Defendant Conaway. There is no evidence that anyone else (including staff) acted on Plaintiff's behalf. (¶19-23 of Counter Statement of Facts)

The sole Member of the LLC is Bernard G. Conaway. (CL-000114-15) There is no distinction between the LLC and Defendant Conaway. The last "meeting" held by the LLC was in 2020 which appeared to be a "sham" meeting only involving Defendant Conway. (¶19-23 of Counter Statement of Facts)

Defendant Conaway doesn't even appear to have Board Members or any

14

viable corporate structure at all. In other words, Conaway Legal LLC is Defendant Conaway and Defendant Conaway is Conaway Legal LLC, there literally is no distinction. There is no distinction, in his dealings between Mr. Conaway, as a professional, an attorney, and his LLC, notwithstanding the signed fee agreement. A professional, an attorney, is not entitled to utilize an LLC to protect himself from personal liability. (¶19-23 of Counter Statement of Facts)

## CONCLUSION

For these and the reasons stated above, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment.

**THE POLIQUIN FIRM LLC**

/s/ Ronald G. Poliquin, Esquire
Ronald G. Poliquin, Esquire
Bar ID No.: 4447
1475 South Governors
AvenueDover, DE
19904
(302) 702-5501
*Attorney for Plaintiff*

Date: July 15, 2024

15