IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY GABBAY,<br><br>      Plaintiff,<br><br>v.<br><br>BERNARD G. CONAWAY, ESQUIRE,<br>CONAWAY-LEGAL LLC,<br><br>      Defendants. | C.A. No. 20-743-JLH-SRF |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On June 2, 2020, the Plaintiff Jeffrey Gabbay ("Gabbay" or "Plaintiff"), filed this professional liability action against his former attorney, Defendant Bernard Conaway ("Conaway") and Conaway's law firm, Conaway-Legal LLC (collectively, "Defendants") Presently before the court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).[1] For the reasons that follow, the court recommends that Defendants' motion be **GRANTED-IN-PART and DENIED-IN-PART**.

### II. JURISDICTION

On September 23, 2024, this case was referred to the undersigned Magistrate Judge to conduct all pre-trial proceedings in this case, including summary judgment, in accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 73. (D.I. 90) Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332(a)(1).

### III. BACKGROUND

Conaway's law firm was retained to represent Plaintiff, in a shareholder's books and

---

[1] The briefing submitted for this motion can be found at D.I. 76, D.I. 81, and D.I. 85.

records case under 8 Del. C. § 220, against Cupron Inc., ("Cupron") in the Delaware Court of Chancery. (D.I. 31 at ¶ 8) On July 13, 2017, the Plaintiff and Defendants executed a retainer agreement (the "Agreement"). (*Id.* at ¶ 7; D.I. 1-1) Plaintiff was recommended to Conaway's law firm by Plaintiff's personal attorney, Clifford Rieders ("Rieders"). (D.I. 78 at ¶ 4) The underlying Court of Chancery case was settled on May 6, 2019, resulting in the buyout of Plaintiff's shares in Cupron. (D.I. 31 at ¶ 9) Pursuant to the settlement agreement, Plaintiff agreed to sell his stock in Cupron in exchange for payment in the amount of $444,990.00. (D.I. 78 at ¶ 9)

On May 31, 2019, the settlement proceeds were wired to Conaway's escrow account for disbursement. (D.I. 78 at ¶¶ 8–9) On June 6, 2019, Conaway emailed Gabbay the final invoice for legal services and requested instructions on where and how to send the settlement proceeds. (D.I. 78 at ¶ 11) Throughout the litigation, both parties agree that almost all communications took place via email. (D.I. 78 at ¶¶ 4–6) On June 7, 2019, Gabbay instructed Conaway to subtract the attorney's fees owed to Conaway and Rieders from the settlement amount, stating: "Yes, you have my authority to withhold from the settlement proceeds any funds due you. [sic] I would also like all outstanding invoices to be paid to Cliff. Please advise the net amount you will forward and I will give you instructions for its transfer." (D.I. 77, Ex. B. at CL-00014) The remaining balance owed to Plaintiff was $426,100.69. (*Id.* at CL-00015)

This lawsuit arises because the disbursement of the settlement proceeds never reached Plaintiff's account. (*See* D.I. 31) They were instead erroneously wired to an unknown individual's bank account in Hong Kong. (*Id.* at ¶ 32) It is alleged that a "hacker" posing as Plaintiff was able to gain access to Plaintiff's work email account and sent fraudulent wiring instructions to Defendants. (*Id.* at ¶ 35)

Plaintiff filed this action on June 2, 2020, alleging breach of contract and breach of fiduciary duty. (*See* D.I. 1) The complaint was subsequently amended twice. (D.I. 12; D.I. 31) The operative pleading is now the third amended complaint ("TAC"), filed on July 27, 2022. (D.I. 31)

Plaintiff's TAC asserts eight counts: Count I asserts breach of contract; (D.I. 31 at ¶¶ 44–56) Count II asserts breach of fiduciary duty; (*Id.* at ¶¶ 57–61) Count III asserts a claim for breach of bailment; (*Id.* at ¶¶ 62–66) Count IV asserts reckless, willful, and wanton conduct; (*Id.* at ¶¶ 67–72) Count V asserts estoppel; (*Id.* at ¶¶ 73–80) Count VI repeats claims for breach of bailment and breach of fiduciary duty; (*Id.* at ¶¶ 81–87) Count VII appears to allege agency and/or alter ego liability; (*Id.* at ¶¶ 88–95) Count VIII asserts negligence. (*Id.* at ¶¶ 96–99)

Defendants filed this motion for summary judgment on June 21, 2024. (D.I. 75) Plaintiff opposed the motion on July 15, 2024. (D.I. 81) Defendants filed a reply brief on July 24, 2024. (D.I. 85) The motion is now ripe for review.

## IV.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support the assertion by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247–49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## V.   DISCUSSION

The Defendants move for summary judgment on all counts asserted by Plaintiff in his TAC, except for Count VIII, alleging negligence. (D.I. 76 at 3) The following discussion addresses the court's recommendation on each of Counts I through VII.

### A. Count I – Breach of Contract

Conaway-Legal LLC moves for summary judgment on the breach of contract claim, alleging that it fulfilled its performance under the retainer Agreement and that Plaintiff has not demonstrated any breach of the Agreement's express terms. (D.I. 76 at 11) Conaway also moves to dismiss this count, contending that he was not individually a party to the contract. (*Id.* at 12) Moreover, Defendants argue that the breach of contract claim is duplicative of the negligence claim brought in Count VIII. (*Id.* at 18–19)

"[A] client who sues his attorney for breach of contract 'must allege that an attorney breached a contract term or failed to follow a specific instruction of the client.' " *Ashby & Geddes, P.A. v. Brandt*, 806 F. Supp. 2d 752, 755 (D. Del. 2011); *Edelstein v. Goldstein*, 2011 WL 721490, at *5 (Del. Super. Mar. 1, 2011) (citations omitted). However, "Delaware courts have recognized that, in the context of legal malpractice, a claimant cannot assert both negligence and breach of contract claims based on the same conduct because tort claims and breach of contract claims are not alternative theories of recovery for the same acts." *Id.*

The majority of Plaintiff's breach of contract claim is duplicative of his negligence and breach of fiduciary duty claims. Plaintiff does not identify any express provisions of the Agreement that were breached. Plaintiff alternatively contends, without citation to authority, that Defendants breached an implied contractual duty to safeguard Plaintiff's settlement funds. Plaintiff's reliance on *Clemens*, an employment case, is misplaced. The court in *Clemens* found that the employer expressly contracted to "take appropriate measures to protect the confidentiality and security" of their employee's personal information, and expressly breached that agreement when their servers were hacked, leaking the employee's sensitive information. *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 156 (3d Cir. 2022).

Here, the court finds that there are no express contractual terms that governed

Defendants' conduct or the specific transaction at issue. Plaintiff argues that the TAC successfully pleads that a breach of contract occurred. (D.I. 81 at 6) However, at the summary judgment stage, the Plaintiff must do more than reiterate the pleadings. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322. Plaintiff's additional argument that Defendants breached an implied contractual obligation lacks legal analysis and is based solely on contentions in his Counter Statement of Facts and the TAC. (D.I. 81 at 6)

The court finds the Plaintiff's breach of contract claim is largely duplicative of his negligence and breach of fiduciary duty claims. To the extent the claims are duplicative, the court recommends **GRANTING** Defendants' motion for summary judgment on the breach of contract claim in Count I. (D.I. 76 at 3)

### B. Count II – Breach of Fiduciary Duty

Defendants argue that the breach of fiduciary duty and breach of contract claims should be dismissed as duplicative of the negligence claim. (D.I. 76 at 18–19) Defendants appropriately cite to Third Circuit authority supporting dismissal of a Plaintiff's breach of contract and breach of fiduciary duty claims when redundant or duplicative of the professional negligence claim. *See Amboy Bancorporation v. Bank Advisory Grp., Inc.*, 432 Fed. App'x. 102, 111 (3d Cir. 2011); *see also Arunachalam v. Pazuniak*, 2016 WL 748005, at *5 (D. Del. Feb. 24, 2016).

Nonetheless, this court has previously acknowledged that there can be narrow circumstances where an attorney takes on fiduciary duties, "such as in the case of client trust accounts or when an attorney is acting in a second capacity like a trustee or corporate manager... [i]ndeed, attorneys are colloquially referred to as 'fiduciaries,' but an attorney must act in some

6

capacity beyond the mere provision of legal services to owe actionable fiduciary duties." *Ashby & Geddes, P.A. v. Brandt*, 806 F. Supp. 2d 752, 757 (D. Del. 2011) (citing *Rich Realty, Inc. v. Potter Anderson & Corroon LLP*, 2011 WL 743400, at *3 (Del. Super. Feb. 21, 2011); *Gelof v. Prickett, Jones & Elliott*, 2010 WL 759663, at *3 (Del. Ch. Feb. 19, 2010); *Sokol Holdings, Inc. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, at *4 (Del. Ch. Aug. 5, 2009).

Here, the asserted claims directly relate to the alleged mishandling of the client's funds in the attorney's escrow account. (*See* D.I. 31) Moreover, Defendant Conaway admitted at his deposition that he owed a fiduciary duty to the Plaintiff regarding the funds he was responsible for disbursing to the Plaintiff. (D.I. 77, Ex. D. at 110:22–111:8) Thus, it is for the factfinder to determine whether the Defendants breached that fiduciary duty.

Accordingly, the court recommends Defendants' motion for summary judgment be **DENIED** as to Plaintiff's breach of fiduciary duty claim in Count II.

### C. Counts III & VI – Breach of Bailment

Defendants move to dismiss this Counts III & VI on the basis that the settlement funds do not constitute a "bailment" under the law. Defendants state that even assuming, *arguendo*, a bailment did exist, there is no evidence that they failed to exercise ordinary care in the handling of the settlement funds. (D.I. 76 at 12–13)

In Delaware, a bailment is defined as a delivery of personal property by one person, the bailor, to another, the bailee, who holds the property for a certain purpose, usually under an express or implied-in-fact contract. *Devincentis v. European Performance, Inc.*, 2012 WL 1646347, at *4 (Del. Super. Ct. Apr. 17, 2012). If a bailee returns the property to the bailor in damaged condition, the bailor has a choice of remedies, either bring a tort action for the damage occasioned by the bailee's negligence or a claim for breach of the bailment contract. *Id.*

In this case, the relationship between Plaintiff and Defendants cannot be defined as one

7

of bailor and bailee. Plaintiff provides no legal authority addressing why an attorney-client relationship would be analogous to a bailment. Furthermore, Plaintiff's reliance on The Delaware Lawyers' Rules of Professional Conduct, Del. R. Prof. Conduct 1.15, relates predominantly to his allegation of professional negligence, not a bailment. (D.I. 81 at 9–11)

The Plaintiff conflates an attorney's fiduciary duty to safeguard client funds with a bailment and cites to no authority supporting that a cause of action exists for a bailment separate and apart from the lawyer's fiduciary duty. (D.I. 81 at 9–11) In this instant matter, no reasonable jury could find that a bailment exists under the circumstances of this case.

Because the claims in Count VI do no more than repeat the same claims for breach of fiduciary duty in Count II and breach of bailment in Count III, I recommend dismissing the repetitive claims in Count VI. To be clear, the claim for breach of fiduciary duty in Count II is left for the factfinder to decide at trial. *See* § V.B, *supra*.

Accordingly, the court recommends that Defendants' motion for summary judgment be **GRANTED** as to Plaintiff's bailment claims in Counts III and VI.

### D. Count IV – Negligence, Recklessness, and Wanton Conduct

Defendants argue there is no basis for an award of punitive damages based upon the underlying facts of this case. Plaintiff has failed to allege facts that would support a finding of recklessness, willfulness, and/or wanton disregard of Plaintiff's interests. (D.I. 76 at 14) Plaintiff argues that the issue of punitive damages should go to the jury because the Defendants were reckless in wiring funds to the wrong account. Furthermore, the Plaintiff argues that Defendant Conaway acted recklessly in failing to carry professional liability insurance and allegedly misrepresenting to the Plaintiff that his insurance would cover the loss.

Plaintiff has failed demonstrate that a dispute of fact exists on this record concerning whether defendants acted recklessly, willfully, or wantonly. Plaintiff fails to address the

8

appropriate legal standard in Delaware for awarding punitive damages. The standard, established in the *Jardel* case requires the following: ". . . the submission of punitive damages claims for jury consideration in such cases [is] evidence of egregious conduct of an intentional or reckless nature." *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529 (Del. 1987). Plaintiff points to no factual evidence in the record that Defendants' conduct meets the standard or amounts to anything more than negligence.

Accordingly, the court recommends that Defendants' motion for summary judgment be **GRANTED** as to Count IV, except for allegations of negligent conduct.

### E. Count V – Estoppel

Defendants seek to preclude Plaintiff from arguing the Defendants should be estopped from denying negligence, breach of fiduciary duty, breach of contract, and breach of bailment. (D.I. 76 at 15)

Plaintiff responds that his intended cause of action is for "promissory estoppel." (D.I. 81 at 13) Even if the court construes the pleading to include such a claim, Plaintiff has failed to carry his burden of demonstrating on this record that all the elements for asserting promissory estoppel have been met.

"To prevail on a promissory estoppel claim, a plaintiff must establish that: (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise. *Lord v. Souder*, 748 A.2d 393 (Del. 2000).

Plaintiff's allegations in support of "estoppel," essentially restate his claims for negligence and breach of contract. (D.I. 31 at ¶¶ 73–80) Plaintiff argues that Defendants promised to remit the settlement funds to Plaintiff but breached this promise. Plaintiff points to

9

nothing more in the TAC or his answering brief which addresses any of the remaining elements required for promissory estoppel.

Accordingly, the court recommends Defendants' motion for summary judgment be **GRANTED** as to Plaintiff's estoppel claim in Count V.

### F. Count VII – Piercing of the Corporate Veil

Defendant Conaway argues that he cannot be held individually liable in the event the Plaintiff prevails on any claim in this suit. (D.I. 76 at 16–18) Conaway contends that the only evidence in the record is that he was an employee of his law firm and all of his conduct vis-à-vis the Plaintiff occurred within the course and scope of his employment. Defendant Conaway does not appear to dispute that his firm is vicariously responsible for conduct that occurred in the course and scope of his employment. Plaintiff argues in his answering brief that he intended to assert an "alter ego" theory of liability against Defendant Conaway in this count. (D.I. 81 at 13–15)

The court should not dismiss Plaintiff's claims for negligence and breach of fiduciary duty against the individual defendant, Bernard Conaway. Regardless of the label and viewing the facts favorably to the Plaintiff on a motion for summary judgment, a reasonable jury could find that Defendant Conaway acted as an employee, agent, or alter ego of his law firm, Conaway-Legal LLC. The extent to which such conduct may render Defendant Conaway individually liable is a fact determination that cannot be resolved at summary judgment on this record.

Accordingly, the court recommends Defendants' motion for summary judgment be **DENIED** as to Count VII.

### VI. CONCLUSION

For the foregoing reasons, I recommend that Defendants' motion for summary judgment

be **GRANTED-IN-PART and DENIED-IN-PART, dismissing with prejudice**:

1) Breach of Contract (Count I);

2) Breach of Bailment (Counts III and VI);

3) Punitive Damages (Count IV); and

4) Estoppel (Count V).

Plaintiff's claims for Breach of Fiduciary Duty (Count II) and Agency and/or Alter Ego Liability (Count VII) are not dismissed.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 27, 2025

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

11